JOSHUA SMITH

*v.*

JACOB TREFZ.

*Opinion filed April 24, 1903—Rehearing denied June 4, 1903.*

APPEALS AND ERRORS—*incompetency of witness cannot be first urged on appeal.* An objection that the complainant in a bill to set aside deeds was incompetent as a witness in his own behalf on the ground that one of the parties was defending as devisee of complainant's deceased wife cannot be urged for the first time on appeal.

APPEAL from the Circuit Court of Hancock county; the Hon. JOHN J. GLENN, Judge, presiding.

MILLER & WILLIAMS, for appellant.

SCOFIELD & MCMAHAN, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is a bill filed by Jacob Trefz against Joshua Smith, impleaded with Charles O'Haven and others, for the purpose of setting aside three certain deeds of conveyance and a contract purporting to be a mortgage to the expectancy of Charles O'Haven, as heir-at-law of Magdalena Trefz. One of said deeds was from Jacob Trefz to Charles O'Haven, one from Charles O'Haven to Magdalena Trefz, and one from Charles O'Haven to Joshua Smith. The deed of Jacob Trefz was alleged to have been procured and made by fraud and collusion between Magdalena, wife of Jacob Trefz, and Charles

O'Haven, her son. The bill alleges that Joshua Smith had notice of the fraud and of the rights of appellee, Jacob Trefz. The case was heard in the circuit court of Hancock county, the evidence being taken in open court without being referred to the master. The prayer of the bill was granted and a decree entered, finding, among other things, that Jacob Trefz is now, and has been since September 26, 1891, the owner in fee of the premises involved; that all of said deeds are void; that a mortgage or contract of O'Haven and Joshua Smith did not pass any interest in the real estate; that a deed from O'Haven to Smith, and said mortgage of Charles O'Haven, are clouds upon the title of said. Jacob Trefz; that all the allegations of complainant's bill are true except those which charge actual fraud on said Magdalena Trefz, and that the equities in the case are with the complainant. From that decree this appeal is prosecuted.

The evidence discloses that Jacob Trefz, who was at the time of this hearing about sixty years of age, came to this country from Germany in 1863. He had a common school education in the German language. About 1868 he married Magdalena O'Haven, a widow, who had a son, Charles, who was then between five and six years of age, and who continued to live with his step-father and mother until he was thirteen or fourteen years of age, when he started out to do for himself. They took up their residence in Hancock county. Charles grew to manhood and was married, and engaged in business as a merchant at Colusa, in said county. There was no issue of the marriage of Jacob and Magdalena. Neither had any property at the time of their marriage. They were economical and industrious and about the year 1891 had saved about $1400, which they had loaned to the step-son, Charles, to use in his business. In that year they determined to, and did, buy sixty-seven acres (the land in question) from one Louis Harned for $3000, assuming a mortgage for $1650 upon the land and paying the balance in cash and

receiving a conveyance to appellee, Jacob Trefz. This purchase was made by Jacob Trefz himself, who transacted the business and arranged the price, the assumption of the mortgage debt and the time when the possession was to be given, and when that time arrived he and his wife went upon the land and continued to make it their home. In September, 1894, the mortgage for $1650 that had been assumed in the purchase from Harned on this land was released and another mortgage placed thereon by Trefz and wife for $1300. In December, 1894, Trefz was kicked by a horse and was severely hurt, and he became uneasy about the duration of his life and determined to make some disposition of his property for the benefit of his wife, who was blind, or nearly so, so that his brothers, who were his next of kin, should not succeed to it in case of his death. With this object in view he sent for Charles O'Haven to come to his house, and when Charles came he directed him to go and get an attorney named Ranck, who lived near to Trefz but had an office in town. Charles went and brought the attorney, and when he arrived a deed for this land was made by Trefz and wife to Charles O'Haven, and also a deed from Charles O'Haven and wife back to Magdalena Trefz, and thus the title stood until April 22, 1896. In the meantime appellee had seen Ranck, the lawyer who made the deeds above mentioned, and told him that he wanted a will made, so that if he should survive his wife he would have an estate in the property, and after he was gone he wanted Charles O'Haven to have it. At all events, the evidence disclosed that he saw Ranck himself, and that some time after he did see him Ranck came to his house and witnesses were sent for. Appellee and his wife, Magdalena, were both there, and Ranck brought a will, already prepared, to be executed by Magdalena, by which the land was devised to appellee for life with remainder to Charles O'Haven. When this will was executed it was kept there at the house by appellee and his

wife until her death, which occurred on July 8, 1897, and shortly thereafter, on the 17th of the same month, appellee took the will to the county court and filed the affidavit offering it for probate, in which affidavit he stated that the testatrix, Magdalena Trefz, died seized of real estate of the value of $3000. The will was admitted to probate, and Charles O'Haven was by the will made executor thereof. In 1896 Charles O'Haven had become indebted to various persons in large amounts, and appellant, Smith, was among his creditors and surety on most of his indebtedness to his other creditors. Among the debts which were owed to appellant was the $1400 that Charles O'Haven owed the appellee when the land was bought, and which was borrowed by O'Haven when demanded by appellee, and for which Smith became surety. His indebtedness, as appears from the evidence, at that time amounted to something near $6000, and on most of it Smith was surety or the holder of the indebtedness itself, and to secure himself he took from O'Haven a mortgage upon his interest in this land, and in 1898, $4000 of the indebtedness being still unpaid, O'Haven, in payment of the same and the purchase price of Smith's interest in certain tools and supplies appertaining to a bicycle repair establishment, variously estimated at from $200 to $500, made Smith a deed to this land, subject to the mortgage of $1300 still remaining on it, and subject to the life estate of appellee.

Jacob Trefz testified that at the time he and his wife made the deed to Charles O'Haven his understanding of the law as to the rights of husband and wife was, that the husband owned two-thirds and the wife one-third of the real estate, and he says, in speaking of his directions to Charles O'Haven: "I told him to go over and get John Ranck, and that I wanted the thing fixed so my woman can get my thirds if I died before her." He further testified that he never had any other talk with Charles O'Haven in regard to the land or its conveyance, either

before or after that time, and all the conversation they had was that included in the above quotation, wherein he directed him to go for Ranck. When Ranck came, two deeds were prepared: one from Trefz and wife to O'Haven, and one from O'Haven and wife to Magdalena Trefz. As Mrs. Trefz was almost blind, a neighbor was sent for to witness her signature to the deed to O'Haven. Both the deeds, that from Trefz to O'Haven and from O'Haven to Mrs. Trefz, were read to appellee at the time the first was executed, and when he and his wife had executed the deed to O'Haven, O'Haven and Ranck took the deed that was to be made to Mrs. Trefz to Colusa, so that O'Haven and his wife could acknowledge the same, and both deeds, by direction of Trefz, were placed of record. Appellee further testifies that O'Haven and Mrs. Trefz never, to his knowledge, had any talk about the deed or any of the conveyances complained of, and that he never had any talk with either of them, except on the night before sending for Ranck to make the deeds he had talked the matter over with his wife.

Charles O'Haven testified with reference to the conversation or direction given him by appellee at the time the deeds were made or at the time Trefz sent him for Ranck: "Jacob Trefz sent for me. He wanted me to come over right away. I went. My mother and step-father were there, and when I got there he told me that he had been kicked by a horse, and my mother was poorly and blind and he wanted her provided for if he should die, as the place was now in his name and he wanted it transferred over in her name." He further testified that they had never discussed the matter before, at any time. He further says: "When I went after Ranck I told him that Trefz wanted him. I told Ranck, just as Trefz told me, to come over and fix up some papers so that my mother could be protected. After Ranck got to the house Trefz did his own talking. Trefz told me to go after Layton as a witness."

Ranck, who drew the papers, died before the hearing in this cause, and the testimony of Trefz and O'Haven was all the testimony there was as to what took place prior to or at the time of executing the deed from Trefz and wife to O'Haven. Layton, who witnessed the deed from Trefz and wife to O'Haven, says that when he went into the house Trefz was in one room and his wife in another, lying down; that Ranck did the talking, and in the presence of Trefz said, "I suppose Mr. O'Haven told you that we wanted you as a witness for these papers;" that Ranck told him there, in the presence of Trefz, that he wanted him to witness a transfer of property from Mr. Trefz to Mrs. Trefz.

If this were all that took place and there were no other circumstances tending to show that Trefz, at the time this deed was made to O'Haven, was not fully informed of what took place, it seems to us it would be difficult to say that he had made a sufficient burden of the proof to warrant the court in finding that by the fraud or circumvention of O'Haven the conveyance had been procured. But in addition to that, after the title had stood in appellee's wife something over a year, Trefz concluded that he would have a will made by his wife, and chose Ranck, the same attorney who made the deeds that are now complained of, and directed him to prepare the will. Trefz's version of this affair is, that he told Ranck that he, Trefz, wanted to make a will so that O'Haven should not get any interest in the land, or, at all events, should not have any interest in it until after he, Trefz, died. He further testified that he did make the will and sign it. No one was present at this conversation and nobody speaks concerning it save Trefz, but the undisputed evidence is, that when Ranck came to the house to have the will signed and witnessed it was already prepared for Mrs. Trefz to execute, and two witnesses were sent for and Mrs. Trefz executed it and it was duly witnessed, and the will shows that Trefz was

in error when he testified that he signed it. ·At the time this will was prepared, and, so far as the evidence discloses, for some time prior thereto, Charles O'Haven was residing in Fort Madison, Iowa, and there is not a particle of evidence showing, or tending to show, that he, at any time or place, said a word to Ranck, or to appellee, Trefz, or to Magdalena Trefz, about making a will. There is no charge that Ranck was .a party to the fraud or was a conspirator against Trefz, and it is utterly beyond explanation that Ranck, when spoken to by nobody but Trefz upon the subject, if Trefz's theóry is true that he told him that he himself was to make a will, should bring a will, already prepared, to be executed by Mrs. Trefz for this land. Then, this will was left there in the custody of Trefz and his wife until the death of Mrs. Trefz, and when that occurred it was filed for probate by Trefz, and he then swore in the application for its probate that Mrs. Trefz died seized of real estate worth $3000. There is no pretense of claim that she had any real estate other than this real estate in question, and it seems to us to be stretching credulity to the extreme to think that Trefz could ignorantly do all these things and take all these steps that are regularly and properly taken ˙by any business man in the same line of business, under the misapprehension all the time that he was doing just the reverse to what he thought he was. Henry Avery, a witness, testified that in the spring of 1895 he helped appellee make a fence, and that appellee told witness then that he had deeded the property to his wife to keep his brothers from getting it if he, Trefz, should die suddenly.

The testimony is, that while Trefz could not read and write English, he bought this land, bought and sold stock, traded in grain and the products of the farm, and was competent to do ordinary and general business; that he talked English fairly well and understood it far better than he talked it. He came to this country in 1863, when he was about twenty-two years of age. Whether

202—38

he talked German after that time, or not, is not disclosed by the evidence.. If Trefz was deceived at the time the deed was made from him to O'Haven and from O'Haven to Magdalena Trefz, and he found out that by that arrangement Charles O'Haven, as the only child of Magdalena, would inherit the land in case of her death and was having the will in question prepared to avert that event, it is inconceivable that he should go to the same attorney who had assisted in perpetrating the first fraud and subject himself to the danger of a second.

Some contention is made over the *bona fides* of the mortgage to Smith, and, afterwards, the deed to him of O'Haven's interest in this land. But in the view we take of this case that cannot be material. There is no claim that Smith's purchase affects the life estate of appellee, and if there was no fraud in procuring the conveyance from appellee, through O'Haven, to Mrs. Trefz, then the title or interest of Smith is a matter between him and O'Haven and of little concern to appellee.

It is also urged by appellant that the appellee was not a competent witness in his own behalf, inasmuch as O'Haven was a defendant to the bill and defended as devisee under the last will of Magdalena Trefz, deceased. There was no objection to his competency as a witness at the trial, and it is too late to raise the question for the first time in this court.

Viewing this record as we do, we think there is an entire failure to show either fraud or collusion or imposition, or any unfair advantage taken of the appellee by Charles O'Haven or by Magdalena Trefz. In fact, the trial court found that as to her the charge was not sustained, and we think should have found it was not sustained as to either of them.

The decree of the circuit court will therefore be reversed and the cause remanded for such other proceedings as to justice and right shall appertain.

*Reversed and remanded.*